UNITED STATES of America, Plaintiff,

v.

TOYS OF THE WORLD CLUB, INC., and Publishers Printing-Rogers Kellogg Corporation, Defendants.

United States District Court
S. D. New York.
Feb. 14, 1959.

Arthur H. Christy, U. S. Atty., Southern Dist. of New York, New York City, Renee J. Ginberg, Asst. U. S. Atty., New York City, of counsel.

Wallstein, Menschel & Wallstein, New York City, for defendant Publishers Printing-Rogers Kellogg Corp.; Benjamin Menschel, New York City, of counsel.

DAWSON, District Judge.

This is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Plaintiff is seeking a judgment declaring the lien of the United States of America for taxes to be a lien upon the fund now held in escrow by defendant Publishers Printing-Rogers Kellogg Corporation (hereinafter called "Publishers") superior to any interest or lien of said defendant. Defendant Publishers has cross-moved for summary judgment.

From the papers submitted, the following facts appear without substantial controversy:

That in September 1955 taxpayer, Toys of the World Club, Inc. (hereinafter called "Toys"), sent a printing order to defendant Publishers; that this order called for Toys to supply Publishers with certain paper stock for the purpose of having Publishers print thereon; that at the time of the agreement Publishers was not in possession of any paper belonging to Toys but delivery under the printing order was made in the latter part of September;

By letter dated October 25, 1955, final agreement was reached wherein Toys was required to pay Publishers $2,250 on November 4, 1955, $2,250 on November 11, 1955, one-half the balance on December 12, 1955 and the remaining half on December 31, 1955. Shipments of the printed material were, pursuant to the

agreement, to be begun on the date the first payment was to be made;

Publishers completed the work required under the order and shipments were made from day to day beginning November 4th and completed November 15, 1955. In all, Publishers received in September 1955 approximately 269,000 sheets of paper, of which 217,000 sheets were printed upon, leaving a balance of approximately 52,000 sheets;

Pursuant to the payment arrangement Toys sent Publishers a check dated November 4, 1955, in the amount of $2,250. This check was not honored. The check required to have been transmitted to Publishers on November 11, 1955 was never sent, nor were the subsequent payments made. Since taxpayer Toys failed to make any payments, Publishers allege they have asserted an artisans' lien, pursuant to § 180 of the New York Lien Law, on the 52,000 sheets of paper which were retained in their possession;

On various dates from February 21, 1956 to May 23, 1956, taxes were assessed against taxpayer Toys, and a notice of a federal tax lien was first filed with the office of the Register of the City of New York on March 7, 1956. Other notices of lien were filed subsequently, all totaling $3,814.95, plus interest due to the United States of America for withholding taxes for various periods of the year 1955. Subsequently, in the summer of 1956, plaintiff served on Publishers notice of tax lien and notice of levy relative to the tax assessments made against Toys. Thereafter, demand for the paper in the possession of Publishers was duly made, but not complied with;

To conserve the value of the paper stock as much as possible, it was agreed by stipulation between Publishers, which claimed an artisans' lien on the stock in question, and the United States Attorney for the Southern District of New York, that Publishers would sell the paper in accordance with established procedures under the law of New York State, and that all claims with regard to the paper would attach to the proceeds of the sale. This was done, and after deducting all expenses and charges, the sum of $1,705.-69 remains, said sum being held in escrow by the attorneys for Publishers.

### Discussion

Plaintiff's argument for summary judgment is threefold, as follows:

1. The defendant Publishers did not have a valid artisans' lien on the paper, because an artisans' lien does not attach to surplus or excess materials which are not altered, repaired or enhanced in value.

2. The defendant Publishers did not have a valid artisans' lien because an artisans' lien is precluded by the existence of a credit relationship between the parties.

3. Assuming that Publishers had an artisans' lien, such lien, if not reduced to a judgment, is subordinate to a federal tax lien.

Consideration will be given to plaintiff's third argument since the conclusion makes superfluous any discussion on the first two arguments.

■■ Assuming the defendant Publishers had a valid and subsisting artisans' lien, the question arises whether the United States had a superior right to the paper in view of the tax assessment and notice of lien filed by the Government. By virtue of § 6322 of Title 26 U.S.C.,[1] a federal tax lien arises at the time an assessment is made and continues until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time. Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 1940, 114 F.2d 380. Since the earliest date on which an assessment was made against the taxpayer Toys is February 21, 1956, the tax lien arose on this date. This lien attaches to all prop-

1. "§ 6322. *Period of lien.*
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

erty and rights to property whether real or personal, belonging to the taxpayer. 26 U.S.C. § 6321.[2]

Publishers' artisans' lien arises by virtue of § 180 of the New York Lien Law[3] for charges for the work done under the printing contract. While §§ 200–210 of the New York Lien Law allow the lienor, on proper notice, to assert his rights and to sell the materials in his possession, no sale was made prior to the filing of the tax lien nor was the artisans' lien reduced to a judgment.

■ A United States tax lien is good against all but mortgagees, pledgees, purchasers and judgment-creditors. As to these groups the Government's tax lien is not valid until it has been filed pursuant to Title 26, U.S.C. § 6323.[4]

■ In United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, the Court stated that the relative priority of the lien of the United States for unpaid taxes is always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this court. United States v. Waddill, Holland & Flinn, 1944, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294.

In United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271, a landlord had levied a distress lien under South Carolina law before a federal tax lien had attached. The claim was not reduced to judgment until after notice of the federal lien. The Court held that the Government's lien must prevail, stating that the landlord had a lien other than a mortgage, pledge or judgment lien, and as to all other liens, such as the distress lien, the Internal Revenue Code afforded no protection.

United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, involved a determination of the question of priority between a mechanics' lien and a tax lien. In that case the work had been completed, a mechanics' lien had been filed in the manner required by state law and proceedings for the foreclosure of the lien were commenced before the assessment and notice of filing of the Government's tax lien. The Supreme Court reversed, without opinion, two lower courts which accorded priority to the mechanics' lien over the federal tax lien. This decision was commented upon in Styles v. Eastern Tractor Mfg. Co., D.C.S.D.N.Y., 1957, 154 F.Supp. 393, 395, where the court stated:

"The conclusion which may be drawn from the above-mentioned case [United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct.

**2.** "§ 6321. *Lien for taxes.*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

**3.** "§ 180. *Artisans' lien on personal property*

"A person who makes, alters, repairs or in any way enhances the value of an article of personal property, at the request or with the consent of the owner has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid."

**4.** "§ 6323. *Validity against mortgagees, pledgees, purchasers, and judgment creditors.*

"(a) *Invalidity of lien without notice.*

"Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) *Under State or Territorial laws.*

"In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or * * *"

646, 100 L.Ed. 871] is that a competing private lien, which is specific and choate under state law, but which is in the process of judicial enforcement, cannot prevail as against a federal tax lien, notwithstanding that the private lien antedated the tax lien, unless the private lien has been reduced to a final judgment. * * *"

In the Styles case the action was by warehousemen to foreclose a lien for storage charges. The court held that in view of the White Bear case, since the warehousemen had not reduced their lien to a final judgment, the Government's tax lien was superior.

■ In the instant case, under the assumption made for the purposes of this argument, Publishers' artisans' lien is a private lien which is specific and choate under the state law. However, as shown by the cases cited above, this is insufficient to overcome the Government's tax lien priority unless the private lien has been reduced to a judgment.

■ The defendant Publishers contends that an artisans' lien is "similar to a pledge" and therefore under 26 U.S.C. § 6323 the tax lien would not be superior to Publishers' claim, unless the tax lien were actually filed prior to the arising of the pledge or artisans' lien.

While it is true that the term "lien" is somewhat analogous to the term "pledge," a lien has a different legal signification.

"* * * A pledge is distinguished from a common-law lien in that, in the case of a pledge, a special property passes to the pledgee with the power to sell on default of the pledgor, while a mere lienor has no authority to sell, but is confined to the right to retain the property until payment. A lien has also been distinguished from a pledge in that a pledge is a transfer of possession as security, whereas, at least in the case of a common-law lien, the transfer of possession is not for the purpose of security, but in order

that service may be rendered to the chattel in question, and the lien arises from the rendering of that service if such service is not paid for." 53 C.J.S. Liens § 1.

Thus an artisans' lien cannot be denominated a pledge within the context of 26 U.S.C. § 6323.

Under the circumstances the United States tax lien is superior to the claim of defendant Publishers. Accordingly, the Government's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted. Settle form of judgment on notice.