UNION CENTRAL LIFE INSURANCE COMPANY *v.* PETERS.

1. RECORDS—UNITED STATES TAX LIENS—STATE STATUTES.

   United States tax liens, to be valid, must be filed in accordance with the law of the State where the property subject to the lien is situated and in the office in which the filing of notices is authorized by State law (26 USCA, §§ 6321–6323; CL 1948, § 211.521).

2. LIENS — PREFERENCE — CHOATENESS — RECORDING — FEDERAL TAX LIENS.

   The test of choateness as applied to a properly recorded business lien, or other lien created by operation of local law and duly recorded, if record is required, means that the business lien will receive preference over a Federal tax lien only to the extent of the fixed amount thereof as of due recordation of the competing Federal lien (26 USCA, §§ 6321–6323; CL 1948, § 211.521).

3. COURTS—STATES—UNITED STATES—PRECEDENTS—FEDERAL QUESTION.

   It is the duty of a State supreme court to follow current decisions of the supreme court of the United States upon decisive Federal questions.

4. TAXATION—FEDERAL TAX LIENS—RECORDING—PREFERENCES.

   Amount mortgagees paid in local taxes previously levied against the mortgaged property but paid after Federal tax lien had been recorded in office of the register of deeds is not accorded preference over such Federal tax lien (26 USCA, §§ 6321–6323; CL 1948, § 211.521).

5. COSTS—FEDERAL TAX LIENS—PRIORITY—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

   No costs are allowed in suit to determine priority of Federal tax liens over other liens, where neither side has prevailed in full (26 USCA, §§ 6321–6323; CL 1948, § 211.521).

Appeal from Oakland; Beer (William John), **J.** Submitted June 7, 1960.  (Docket No. 8, Calendar No.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  51 Am Jur, Taxation § 1010.
[2]  51 Am Jur, Taxation § 1016.
[3]  14 Am Jur, Courts § 117.
[4]  51 Am Jur, Taxation § 1020.
[5]  14 Am Jur, Costs § 11.

48,252.) Decided September 16, 1960. Certiorari granted by the Supreme Court of the United States March 27, 1961.

Bill by the Union Central Life Insurance Company, an Ohio corporation, against Robert G. Peters, Jr., and Helen R. Peters to foreclose mortgage, with the United States of America joined as party defendant to determine priority of mortgage lien over tax liens. Decree for plaintiff. Defendant United States of America appeals. Affirmed in part and reversed in part.

*Clark, Klein, Brucker & Waples (Joseph B. Sherrard* and *H. William Butler,* of counsel), for plaintiff.

*Charles K. Rice,* Assistant Attorney General, *Lee A. Jackson, George F. Lynch* and *Moshe Schuldinger,* Attorneys, Department of Justice, *Frederick W. Kaess,* United States Attorney, and *Elmer L. Pfeifle, Jr.,* Assistant United States Attorney, for defendant United States of America.

BLACK, J. The defendant United States appeals from a decree foreclosing a real-estate mortgage, executed by defendants Peters as mortgagors in favor of plaintiff as mortgagee.* The decree grants supremacy of the lien of the mortgage, to extent of all sums due and to become due according to its tenor, over competing Federal liens for income taxes Mr. and Mrs. Peters failed to pay for the tax periods 1952, 1953, and 1955.

It is stipulated, "apart from the legal questions raised in this action relating to priority of liens," that plaintiff's said mortgage "is a valid and subsisting

---

* The mortgage was duly recorded in the proper register of deeds office November 24, 1954.

first lien" upon the mortgaged premises.  It is stipulated also that 2 of the 3 liens claimed by the United States were recorded only in the office of the clerk of the proper United States district court, and it is agreed further that the third of such liens (No P-1697), which is based on 1955 income taxes owing by Mr. and Mrs. Peters, was not recorded in the register of deeds office until July 12, 1957.  Shortly thereafter plaintiff paid, as was its self-protective right under the terms of the mortgage, unpaid local taxes previously levied against the mortgaged premises. The sum so paid by plaintiff was $646.89.

Refer to sections 6321, 6322, and 6323 of the revenue code of 1954 (26 USCA, §§ 6321, 6322, and 6323).  Thereunder these Federal liens arose against "all property and rights to property" of the taxpayers.  Said section 6323 provides that such lien "shall not be valid as against any mortgagee  *  *  * until notice thereof has been filed  *  *  *  in the office designated by the law of the State or Territory in which the property subject to the lien is situated." When the events giving rise to this litigation occurred, it was provided by Michigan law (CL 1948, § 211.521 [Stat Ann 1950 Rev § 7.751]) "That whenever the collector of internal revenue,  *  *  *  shall desire to acquire a lien in favor of the United States for any tax payable to the United States against any property, real or personal, within the State of Michigan,  *  *  *  he is hereby authorized to file a notice of lien, setting forth the name and the residence or business address of such taxpayer, the nature and the amount of such assessment, and a description of the land upon which a lien is claimed, in the office of the register of deeds in and for the county or counties in Michigan in which such property subject to such lien is situated."  None of the Federal liens for unpaid income taxes owing by Mr. and Mrs.

Peters were recorded, according to Michigan statute, excepting as previously noted.

Two questions are presented. Such questions, taken from the respective briefs, are as follows:

"1. Should a Federal tax lien against Robert G. Peters and wife, which was not filed with the register of deeds of Oakland county in accordance with the requirements of the Michigan recording statute, be allowed to take priority over the mortgage executed by Robert G. Peters and wife to the appellee?"

"2. Whether the Federal tax liens are entitled to priority over payments made by the mortgagee for local taxes, as well as over payments for such taxes which the mortgagee might make in the future during the redemption period following foreclosure?"

*First:* For an affirmative answer to stated question 1 defendant United States relies particularly on *United States* v. *Rasmuson* (CCA 8), 253 F2d 944. For a negative answer to such question plaintiff relies principally on *Youngblood* v. *United States* (CCA 6), 141 F2d 912. *Rasmuson* and *Youngblood* were not reviewed by the supreme court and it is conceded, with respect to the specific question each court considered, that the supreme court has not spoken save only by opposing analogies counsel have pressed upon us. Having considered the briefs and arguments addressed to stated question 1, we accept *Youngblood's* reasoning and application of our statute as decisive. The question is therefore answered by adoption of the following conclusion of the court of appeals of the sixth circuit (*Youngblood,* p 915 of report):

"*United States* v. *Snyder,* 149 US 210 (13 S Ct 846, 37 L ed 705), adds no force to the government's contention for the reason that, while it was there held that the tax system of the United States is not subject to the recording laws of the States, the acts of congress since that decision have required recording

of United States tax liens: first, in accordance with the law of the State where the property subject to lien is situated; and, later and presently, in the office in which the filing of notices is authorized by the State law. Upon obvious principles of comity, the congress of the United States has provided for compliance by the government with State recording laws. The notice of tax lien involved in this controversy does not so comply."

*Second:* This is the more difficult question. Much though we might agree with the plaintiff mortgagee that a decision to subordinate its mortgage-provided lien, for expenditures made and to be made for protection of its primary lien, is bound to impede if not demoralize the so-called mortgage business in Michigan, there appears no alternative than that of due application of what is known in authoritative Federal decisions as the "test of choateness." In plain backyard words, the "test of choateness" as applied in cases as at bar means that a properly recorded business lien, or other lien created by operation of local law and duly recorded (if record is required), will receive preference over a Federal tax lien only to the extent of the fixed (yes, "choate") amount thereof as of due recordation of the competing Federal lien. The legal nature of such test will be found in the recent opinion of the 4th circuit in *United States* v. *Bond,* 279 F2d 837, 844–846 (handed down May 31, 1960, and cited to us since argument of this case). Since the whole ground has been so freshly and thoroughly covered in *Bond,* and since the Federal courts of appeal are usually better equipped than State courts to appraise and apply decisions of the supreme court, we abstain from quotation or discussion of the question and refer the reader to *Bond* for understanding of our ruling that stated question 2 must be answered by granting supremacy of duly recorded Federal tax lien No P–1697 over the mort-

gagee's lien for local taxes paid by it after July 12, 1957.

Our concern over this result is shared elsewhere, so much as to give impetus to recent effort of the American Bar Association to correct matters by proposed congressional act.* Nevertheless it is the duty of this State Court to follow current decisions of the supreme court upon decisive Federal questions. This is such a question, since its present solution—shown in *Bond*—determines the extent to which Congress has consented that Federal tax liens may be subordinated to business or statutory liens. And we have no right to look into the "womb of time" or the "seeds of time" to anticipate a possible doctrine of modification (see *Scholle* v. *Secretary of State,* 360 Mich 1, 114). If a State court were possessed of such right, it is likely that a portent of re-examination might be found in the newest decisions of the supreme court (see *United States* v. *Brosnan,* 363 US 237 [80 S Ct 1108, 4 L ed 2d 1192] ; and *Acquilino* v. *United States,* 363 US 509 [80 S Ct 1277, 4 L ed 2d 1365] ; and *United States* v. *Durham Lumber Co.,* 363

---

* "The Federal government possesses a powerful weapon for the collection of delinquent taxes, a sweeping lien which attaches to all property of the taxpayer, real, personal, or intangible, which he then owns or thereafter acquires. That lien has been a matter of increasingly grave concern to banks, in their capacities both as creditors and as debtors of persons who are or may become delinquent in their taxes. That concern is based principally on a series of supreme court decisions, most of them unenlightening *per curiam* reversals, which lay down the rule that no contractual or statutory lien can prevail over even a subsequently arising Federal tax lien unless the non-Federal lien meets a most exacting standard of 'choateness.' Regardless of State laws to the contrary, a private lien securing a contingent or unliquidated claim, or which attaches to a shifting mass of property, is regarded as 'inchoate' and is subordinated even to Federal tax liens that did not exist when the private lienor extended credit on the faith of the debtor's property. The alarming trend of those decisions moved the American Bar Association to appoint a special committee on Federal liens, whose legislative recommendations were approved by the association on February 23, 1959." ("Federal Tax Liens: Effects of the American Bar Association Proposals on Banks and Secured Lenders"; The Banking Law Journal, Vol 76, No 5, May, 1959, pp 369, 370.)

US 522 [80 S Ct 282, 4 L ed 2d 1371]). In *Acquilino* and *Durham* the supreme court hints circumstantially that it may be ready to qualify the mentioned test of "choateness." The hint, however, is neither loud nor clear; hence it is our plain duty to follow the supreme rule *Bond* expounds from *United States* v. *Security Trust & Savings Bank*, 340 US 47 (71 S Ct 111, 95 L ed 53); *United States* v. *New Britain*, 347 US 81 (74 S Ct 367, 98 L ed 520); *United States* v. *Acri*, 348 US 211 (75 S Ct 239, 99 L ed 264); *United States* v. *Liverpool & L. & G. Ins. Co.*, 348 US 215 (75 S Ct 247, 99 L ed 268); *United States* v. *Scovil*, 348 US 218 (75 S Ct 244, 99 L ed 271); and *United States* v. *R. F. Ball Construction Co., Inc.*, 355 US 587 (78 S Ct 442, 2 L ed 2d 510).

Affirmed in part and reversed in part, and remanded for entry of decree in accordance with the respective answers we have given to the stated questions. No costs.

Dethmers, C. J., and Carr, Kelly, Smith, Edwards, Kavanagh, and Souris, JJ., concurred.